HEATH *vs.* THE STATE.

[INDICTMENT FOR RESISTING PROCESS.]

1. *Validity of official acts of officer de facto.*—The official acts of an officer *de facto* are valid, so far as the rights of the public, or of third persons having an interest therein, are concerned, and cannot be indirectly called in question in a proceeding to which he is not a party; consequently, under an indictment for resisting the execution of process by a constable, it having been shown that the constable was exercising the duties of that office under color of an election, and that the process in his hands was such as it is the right and duty of constables to execute, the defendant cannot be permitted to prove that, by reason of a taint in his blood, the constable was constitutionally incapacitated to hold any civil office.

FROM the Circuit Court of Autauga.

Tried before the Hon. PORTER KING.

THE indictment in this case charged, that the defendant, Seaborn Heath, "did knowingly and willfully oppose or resist William Chavis, a constable of said county, in attempting to serve or execute a peace-warrant, or writ of arrest, issued by Robert Kerr, a justice of the peace of said county." The case was before this court at its June term, 1859, when the judgment of the circuit court was reversed, and the cause remanded.—See 34 Ala. 250. On the second trial below, as the bill of exceptions in the present record shows, "the State introduced legal evidence, showing that, within twelve months before the finding of the indictment in this case, one William Chavis had been elected a constable in said county, and had duly qualified as such constable; that whilst said Chavis was acting as such constable, a warrant of arrest, called a peace-warrant, which was in all respects regular and legal, was placed in his hands as such constable, authorizing and commanding him to arrest the defendant; that he attempted to arrest the defendant, under and by virtue of said process, before the finding of the indictment in

this case; and that the defendant opposed and resisted him in the execution of said process, and refused to permit him to execute the same, on the ground, as said defendant alleged at the time, that said Chavis was not a white man, and was incompetent to act as an officer, or to execute process." The State having here closed, the defendant offered to prove, "by legal testimony," that the paternal grandmother of said Chavis was the daughter of two mulattoes, each of whom was the child of a full-blooded negro and a white person; "which proof was offered for the purpose of showing that said Chavis was not a free white male person, within the meaning of the constitution and laws of this State, but was descended from negro ancestors to the third generation inclusive, although one ancestor of each generation may have been a white person; and that the election of said Chavis as a constable was an absolute nullity : and that, as a free negro, he was incompetent to execute, or to attempt to execute said process on the defendant, at the time he was opposed and resisted by said defendant as aforesaid; and that the defendant had the right to resist said Chavis in the execution of said process, to a sufficient extent to prevent himself from being arrested by a free negro." The court excluded the evidence, and the defendant excepted.

WATTS, JUDGE & JACKSON, for the prisoner.—Under the constitution and laws of this State, only "free white male persons" are eligible to office.—Code, § 105. The general proposition is undoubtedly true, that the colorable election and induction of a person into office, and some action thereunder by him, constitute him an officer *de facto*, so long as he exercises the duties of the office. Burke v. Elliott, 4 Iredell's R. 355; Pearce v. Hawkins, 2 Swan, 87. Although the cases have gone a great way in supporting this proposition, "they have stopped with preventing mischief to such as confide in officers who are acting in that right."—Green v. Burke, 23 Wendell, 502. But in a government of white men, where the negro has no political *status* as a person or citizen, a free negro cannot be recognized as an officer *de facto*, because he can never

become an officer *de jure*. An officer *de facto* is, *prima facie*, an officer *de jure*.—Allen v. The State, 21 Geo. 217. But a negro can never be, *prima facie*, an officer *de jure*. It is contrary to public policy, in a slave State, that a negro should be recognized as an officer under any circumstances. Suppose a sheriff should appoint a full-blooded negro as his deputy; would it be the duty of white persons to submit to him as an officer *de facto* ?

WM. L. YANCEY, with whom was M. A. BALDWIN, Attorney-General, *contra.* — An officer *de facto*, acting under color of an election or commission, is a legal officer as to all parties, except in a direct proceeding to set aside his commission. His official acts, when they concern the public, are valid; and even a constitutional disqualification on his part to fill the office, does not affect their validity.—Wilcox v. Smith, 5 Wendell, 231; McInstry v. Tanner, 9 Johns. 135; People v. Collins, 7 Johns. 549; People v. Hopson, 1 Denio, 574; People v. Stevens, 5 Hill, 630; Smith v. The State, 19 Conn. 493; Sasnett v. Weathers, 21 Ala. 673; 1 Texas, 653.

R. W. WALKER, J.—Our opinion is, that the court did not err in excluding the evidence offered by the defendant.

It is well settled, upon great principles of public policy, that the acts of an officer *de facto*, whether judicial or ministerial, are valid, so far as the rights of the public, or third persons having an interest in such acts, are concerned; and that neither the title of such an officer, nor the validity of his acts as such, can be indirectly called in question, in a proceeding to which he is not a party. This doctrine dates as far back as the Year-Books, and it stands confirmed, without any qualification or exception, by a long line of adjudications, both in England and in the United States.—King v. Corporation of Bedford Level, 6 East, 366; 1 Blackst. Com. 204, 37; Mays v. Stonum, 2 Ala. 390; Sprowl v. Lawrence, 33 Ala. 688; People v. Hopson, 1 Denio, 579; People v. White, 24 Wend. 526; State v. Alleny, 12 Ohio, 16; Gilliam v.

Reddick, 4 Ired. 368; Wilcox v. Smith, 5 Wend. 232; McInstry v. Tanner, 9 Johns. 125.

The authorities are, perhaps, not entirely uniform in the definition of an officer *de facto*; but they all concur in recognizing as such any person who exercises the duties of an office, under color of an appointment or election to that office. Lord Ellenborough's definition is less restrictive; for he defines an officer *de facto* to be, one "who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law."—King v. Corporation of Bedford Level, 6 East, 366.

It was an undisputed fact in this case, that Chavis was exercising the duties of constable, under color of an election to that office, and that the process he was seeking to enforce was such as it is the right and duty of constables to execute. He was, therefore, an officer *de facto*, and was acting as such. That by reason of a taint in his blood he was constitutionally incapacitated from holding any civil office in Alabama, and, therefore, could never be a constable *de jure*, cannot alter the stubborn fact that he was elected constable, exercised the duties of the office under color of that election, and thereby became an officer *de facto*.

If the rejected evidence had been admitted, and had satisfied the jury that Chavis "was descended from negro ancestors within the third generation inclusive, although one ancestor of each generation may have been a white person," it would not have had the effect of ousting him from office; and the judgment would have been worthless as evidence in any other proceeding where his title to the office, or any other acts of his in discharge of its duties, might be drawn in question. In a direct proceeding, where he himself was a party, he would have an opportunity of defending his title; and the evidence in relation to his eligibility, and consequently the conclusion of the jury as to his right to the office, and the validity of his official acts, might be altogether different. The mischief would be intolerable, if persons whose rights depend on the acts of officers *de facto*, whether judicial or ministerial, could be called on in every proceeding

involving those rights, to enter into an inquiry into the pedigree of the individuals holding the offices.

The evils which it is suggested may result, if we sustain the ruling of the circuit judge, are altogether fanciful. In our state of society, it is hardly conceivable that civil offices will ever be conferred on any persons who are known not to be free white males. It is fair to presume, that if any others should be elected to, or hold such offices, they would be persons whose antecedent history was unknown, and whose personal appearance would furnish no indication of the impure blood which is visited with civil incapacity. The necessity of protecting the rights of individuals, securing the public peace, and maintaining the supremacy of law, requires that the official acts of such persons should not be invalidated, nor their title to the office annulled, in any proceeding to which they are not parties.

It was not proposed to prove that Chavis was a slave, but that he was a free negro. And our decision is, that for the purposes for which it was offered, the evidence was inadmissible.

Judgment affirmed.