[Thorington v. Gould.]

# Thorington v. Gould.

## Injunction.

1. *The grant of a temporary injunction without requiring a bond, is irregular.*—The grant of a temporary injunction on a bill not verified, and without requiring bond from the complainant, is an irregularity; but it will not cause the reversal of the final decree, if that is supported by the pleadings and proofs.

2. *An attachment levied on property conveyed by a bona fide assignment will be enjoined.*—If an insolvent foreign corporation conveys *bona fide* its lands to an assignee for the equal benefit of its creditors, a court of equity will enjoin the prosecution of an attachment commenced after the assignment, and levied on the property assigned.

3. *An officer of a corporation, whose term of office has expired, may, if no successor be appointed, continue to perform the duties of the office.*—When the duration of an official term is expressed by the charter of a corporation which creates the office, the intention is, that on the expiration of the term, the authority and duty of the officer shall cease; but if the proper corporate authorities neglect to provide a successor, and suffer the officer to continue the discharge of the duties of the office, unless the State or a stockholder objects, no one can complain.

4. *The acts of a board of directors whose term has ended, are valid as to third parties.*—The acts of a board of directors, appointed under the charter to serve until the end of the first Monday in January thereafter, are, after the expiration of the time, valid as to third persons.

5. *When the seal of a corporation is affixed to a deed by the proper officers, the validity of the contract will be presumed.*—When the common seal of a corporation is affixed to a deed, and it is signed by the officers authorized by the charter to sign, or attest its contracts, it will be presumed that the instrument was executed by the authority of the corporation; and those who assail it must show its invalidity.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. ADAM C. FELDER.

The appellant, Sallie G. Thorington, owned a large amount of the bank-bills issued by the Mechanics' Bank, a corporation chartered by the State of Georgia, and doing business in the city of Augusta. To collect the debt due her, she "sued out" a writ of attachment, which was levied on land situated in the county, and State of Alabama, and belonging to the Mechanics' Bank.

Thereupon, William T. Gould filed a bill of complaint in the Chancery Court of Montgomery county on the 26th day of October, 1872, against the appellant. He alleged in his bill that on the fourth day of January, 1866, the Mechanics' Bank had executed and delivered to him a deed of general

assignment of its property and effects, including the land levied on under the said writ of attachment; and on the same day he accepted the trust and entered upon the discharge of its duties. He "took possession by his agents of the lands, tenements and hereditaments," in the said month of January," "and has ever since remained in possession of the same by his agents and tenants."

The complainant denied that the appellant was a creditor of the Mechanics' Bank, or that she was the sole holder of the bills upon which suit had been commenced; and alleged that the bank-bills had been obtained after the bank had made the assignment to him, and that the appellant had full knowledge of this fact. The complainant prayed that a writ of injunction be issued " to enjoin and restrain all further proceedings on said attachment to subject said real estate to the payment of the demands set up on said attachment suit. And on final hearing, to perpetuate said injunction and remove the cloud created by said attachment to the complainant's title to said real estate."

The bill of complaint was not sworn to; and the chancellor, at the May term, 1873, in granting the prayer for a writ of injunction, overruled the motion of the appellant that the complainant should give bond before the issue of the writ.

In her answer the respondent denied that any person or persons having legal authority from the Mechanics' Bank, or the said bank itself " ever executed and delivered to the complainant a general assignment of its property and effects for the benefit of its creditors, as alleged." The respondent averred that she was the sole owner of the bank-bills upon which she had sued, and denied that they had been transferred to her subsequently to the execution of the said deed of assignment, of which she had " no notice before the institution of the said attachment suit."

The respondent " further" averred " that said pretended deed of assignment was made, executed and delivered by said Mechanics' Bank to said William T. Gould as trustee, and was accepted by him with the intent to hinder, delay and defraud this defendant and the creditors of the said Bank of their just and lawful demands, and that said deed is therefore fraudulent and void."

The respondent denied that the Mechanics' Bank was engaged in " business in the city of Augusta in the year 1866, and that the said alleged deed of assignment was ever executed by said Mechanics' Bank, or by any person or persons in that behalf authorized, and that the same is not the act

[Thorington v. Gould.]

or deed of said corporation; that the said Thomas Metcalf was not the president, and John A. North was not the cashier of the said Mechanics' Bank at the time said deed purports to have been executed, and that they or either of them was not authorized to act for said Bank in that behalf." She also alleged "that the legal and equitable title to said property was still in said Mechanics' Bank, and that said W. T. Gould has no interest in or title to said property or any interest therein."

The charter of the corporation provided that the directors "who shall be chosen at any election shall be capable of serving as directors by virtue of such choice until the end of the first Monday in January next, ensuing the time of such election, and *no longer;* and the said directors at their first meeting after each election, shall choose one of their number as president." The same section of the charter also contained a provision, "that in case it should at any time happen that an election of directors should not be made upon any day when pursuant to this act it ought to have been made, the said corporation shall not for that *cause be deemed to be dissolved,* but it shall be lawful on any other day to hold and make an election of directors, in such manner as shall have been regulated by the rules and by-laws of said corporation."

The evidence showed that the board of directors was elected in 1865, but that no election was held in 1866; and that "the president and other officers" held "over and" discharged "the duties of their respective offices till the date of the assignment." The testimony also tended to show that there was a meeting of the stockholders of the bank in January, 1866, but there was no election of directors; and at that meeting there was an assignment authorized of all the property of the bank to William T. Gould. At that time Thomas S. Metcalf was acting as president, and John A. North as cashier, of the Mechanics' Bank. The defendant moved to dismiss the bill of the complainant for want of equity; but the court overruled the motion.

On the final hearing of the cause, the court decreed that the complainant was entitled "to the relief prayed for in his bill, and that the defendant, Sallie G. Thorington, be and she is hereby perpetually enjoined and forever restrained from further proceedings to subject the lands described in the bill, or any part thereof, to the payment of the debt alleged to be due to her from the Mechanics' Bank of Augusta, in the State of Georgia, or by virtue of the writ of

[Thorington v. Gould.]

attachment, issued out of the Circuit Court of Montgomery county, as stated in the proceedings in this case."

BRAGG & THORINGTON, and WINTER & WINTER, for appellant.—1. It will be observed that the complainant rests the equity of his bill on a single ground, that the attachment creates a cloud upon his title as trustee, &c. The bill seeks no discovery, asks no aid of the court in the execution of his trust, and shows no special ground for equitable interference; but it is an attempt to withdraw the decision of the question of title to the property from the court of law to the court of equity.

2. If the complainant had alleged the prevention of a multiplicity of suits, or a dissolution of the bank, there, might have been some pretext for the interference of a court of equity in his behalf, because in that event the validity of the deed might not have been drawn in question in the attachment suit. In levying this attachment the appellant merely pursued the remedy which every creditor has of levying at his peril on any property he claims to be the property of the debtor.—7 Ala. 585; 9 Ala. 363.

3. The court erred in granting the temporary injunction, because the bill of the complainant "had been filed without oath; the defendant had filed her answer, in which she had denied fully and positively all the allegations of the bill, except those relating to attachment suit," &c.

Two depositions of witnesses had been published without prejudice, and it was shown by them that the facts were variant from complainant's bill, and was not entitled to progress further without amending the bill to conform to the proof. The effect of granting this motion was to try the case by piecemeal, and to decree in favor of the complainant on half the testimony, and to assume that the remainder of the testimony would not materially affect the case.

The Code is imperative in its requirement of a bond to be given in all cases of injunction to restrain proceedings at law on a moneyed demand; and the court has no power to relieve the complainant from the operation of the statute.—Code, § 3430.

Independent of authority from the Board of Directors, the president and cashier had no power to execute the deed of assignment. No argument is necessary to support this proposition; a mere citation of authorities is all that can be necessary.—7 Ala. 293–94; 14 Mass. 180; 17 Mass. 97; Ang. & Ames, Corp. p. 313.

[Thorington v. Gould.]

WATTS & TROY, for appellee.—1. There can not be any reasonable doubt of the validity of the deed of assignment. It was authorized by the unanimous vote of the stockholders, and ratified by them after it was made.—Ang. & Ames. on Corp. § 98*a*, § 98; 35 Mo. 13. Directors *de facto* are *prima facie* directors *de jure.*—2 Cranch Cir. Ct. 449, 451; 12 Maine, 205; Ang. & Ames, §§ 280-1-2-3, and 292. The stockholders compose the bank, and the directors, president, cashier, or other officers, are their agents.—Id. § 771.

2. When a deed is made under the seal of a corporative body, it is presumed to be the act of the corporative body. Ang. & Ames, Corp. §§ 224-5. Corporations are bound by the same implications and inferences as natural persons.—1 Brick. Dig. p. 403, §§ 33, 35. Assignments to pay debts by corporations are valid.—7 Ala. 282.

BRICKELL, C. J.—The grant of a temporary injunction, the bill not having been verified, and without requiring bond from the complainant, payable and with condition as the statute requires, was irregular. The irregularity, is not however cause for the reversal of the final decree, if that is supported by the pleadings and proofs. It has worked no injury to the appellants, if the appellee is entitled to the perpetual injunction.

The equity of the bill rests on the well defined jurisdiction, to prevent, as well as to remove clouds on the title to real estate. If under legal process ·acts are being done, or are in the course of being done, the necessary result of which, will cast a cloud on the title of the true owner, who is in possession, and without adequate legal remedy for their prevention, a court of equity will interfere by injunction to restrain them.—*Burt v. Cassety,* 12 Ala. 734; *Lyon v. Hunt,* 11 Ala. 295; *Martin v. Hewitt,* 44 Ala. 418. The motion to dismiss for want of equity, involved the admission of the truth of all facts well pleaded in the bill. Assuming the truth of these facts, the only result of the levy of the attachment, and a sale under the levy, which it was the purpose of the attachment suit to accomplish, would have been by casting a cloud on the title of the appellee, to have embarrassed him in the exercise of the trusts and powers of the assignment. The *bona fides* of the assignment, and its sufficiency to pass to the appellee, the legal estate in the premises, is not matter of controversy, if its execution was authorized by the proper agencies of the Mechanics' Bank.

The point of controversy is, whether the assignment was

authorized by the agency of the bank, having capacity to authorize it. It is properly admitted, that in the absence of legislative inhibition, the bank had capacity to make an assignment of its property, for the payment of its creditors. But the appellant insists, under the charter of the bank, the board of directors had exclusive power to make, or to authorize such an assignment. That the assignment to the appellee, was not authorized by a board of directors having any power or authority whatever—that their official term had expired before the execution of the assignment, and the charter prohibited them from exercising the power of directors after the expiration of that term.

The charter of the bank seems to contemplate that all the corporate power conferred, shall be exercised by the board of directors, elected annually by the stockholders. Annual meetings of the stockholders are authorized, but the power which the stockholders can exercise at such meeting, beyond the election of a board of directors, is not defined in express terms. The directors were to be elected *for the well ordering of the affairs of the corporation*, and were capable of serving when elected, *until the end of the first Monday in January, next ensuing the time of such election, and no longer*. To avoid a dissolution, it is provided by the charter, if an election of directors was not made at the time appointed, it should be lawful to make an election at such other time, as might be fixed by the by-laws of the bank. The assignment to the appellee, was authorized by the board of directors, and subsequently ratified by the stockholders, if indeed, the fact is not, that the stockholders requested, and by requesting, authorized the directors to execute it. The evidence leaves it uncertain, whether the stockholders ratified the assignment after it was made, or prior to its execution authorized it. It is not material to the validity of the assignment whether the one fact or the other is true. A ratification would be equivalent to a prior authority. The assignment was executed on the 4th day of January, 1866. It is not a disputed fact that its execution was authorized by the board of directors, and by the board elected and serving for the year 1865. When the authority was conferred, whether in December, 1865, or in January, 1866, after their official term had expired, the evidence leaves in uncertainty and doubt. Perhaps, the just inference is, that during the progress of the war, the assets of the bank had been converted to such an extent, into the securities of the Confederate Government, that on the downfall of that government, the hopeless insol-

[Thorington v. Gould.]

vency of the bank, and its utter inability to continue business, and its corporate existence, was a recognized fact. In view of this fact, a meeting of the stockholders was convened, and determining that it was best to make an assignment of all the corporate property, for the equal benefit of the creditors of the bank, the assignment to the appellee was authorized by the stockholders, and the board of directors elected for 1865. The assignment being authorized and its immediate execution contemplated, there was no necessity for an election of directors for 1866, and none was made. The whole transaction from the meeting of the stockholders, at which the resolution to make an assignment was adopted, until its execution was continuous, only such time elapsing as was necessary for a due consideration of the important step which was being taken, and proper deliberation in the preparation of the assignment. The doubt and uncertainty as to the facts arises from the loss of the minute book, in which the record of the proceedings of the meetings of the stockholders, and of the board of directors, was kept, and the witnesses are testifying, after the lapse of six or seven years from the occurrence of the facts.

It is true, as a general proposition, that the presumptions applicable to individuals, are applicable to corporations. The maxim, *omnia presumuntur rite, et solemniter esse acta, donec probetur in contrarium*, applies to corporations, and corporate action. Charters of incorporation and their acceptance, have been presumed, when the actual corporate existence and action, is a fact of long and undisputed continuance, and the question arises collaterally.—In *Bank of United States v. Dandridge*, 12 Wheaton, 70, it is said, after referring to the presumptions indulged for and against natural persons; "the same presumptions are, we think, applicable to corporations. Persons acting publicly as officers of the corporation, are to be presumed rightfully in office; acts done by the corporation, which pre-suppose the existence of other acts to make them legally operative, are presumptive proofs of the latter." Again, "if officers of the corporation openly exercise a power which pre-supposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed."—In Angell & Ames on Corporations, § 224, it is stated: "When the common seal of a corporation appears to be affixed to an instrument, and the signatures of the proper officers are

[Thorington v. Gould.]

proved, courts are to presume that the officers did not exceed their authority, and the seal is *prima facie* evidence that it was affixed by proper authority. The contrary must be shown by the objecting party. The presumption of authority to affix the common seal, from the fact that it is affixed to the instrument, will not be overcome, in the case of a cashier· of a bank, by the mere fact that it is proved that there is no vote of the directors on the subject, since it often happens that the cashier or other officer of a bank exercises a large range of powers, ;with the tacit approval of his principals, although the nature and extent of his authority has never been defined by any direct act of the corporation." The 8th section of the charter of the bank, expressly provides that all its contracts shall *be signed by the President, and counter-signed or attested by the Cashier*. The assignment to the appellee is under the corporate seal, executed by persons executing as such officers in the name of the bank. It was accepted by the appellee, cotemporaneously with its execution, and he has since had possession of all the assets conveyed by it, and openly exercised all its powers and duties. Since its execution, the existence of the bank as a corporation has been merely nominal. The premises in controversy have been in the undisturbed possession of the appellee,. through his tenants, and publicly offered for sale by his· agents. The presumption indulged in favor of the validity of the assignment, from this state of facts, must prevail, and must be overcome by the appellant, if it be conceded that· the board of directors alone could have authorized its execution, during the official term for which they were elected. Whatever of doubt and uncertainty may attend the fact, the just presumption arising from this state of facts, resolves in favor of the validity of the assignment,—that it was executed under authority from the corporate agency, having capacity to authorize its execution.

But we can not concede the invalidity of the assignment,. if the fact was clearly shown, that its execution was authorized by the board of directors elected for 1865, in January, 1866, after the expiration of their official term, successors to them not having been elected, and they continuing without dissent from the stockholders, or from the State, to exercise the functions and powers of directors. Officers coming rightfully into office, though improperly continuing in office, are generally regarded as officers *de facto*. The acts of officers *de facto*, whether public officers, or the officers of corporations public, or private, are esteemed valid, unless·

invoked for their own protection, the public, or individuals, having rights and interests to be conserved, in all collateral proceedings. All authorities concur in recognizing as an officer *de facto*, a person exercising the powers and duties of the office, under color of an appointment or an election. The definition of such an officer, given by Lord ELLENBOROUGH, in *King v. Bedford Level*, 6 East. 368, this court has accepted and adopted, and it is probably the most accurate and expressive which could be framed. "*An officer de facto, is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law.*"—*Heath v. State*, 36 Ala. 273; *Williamson v. Woolf*, 37 Ala. 298. Whenever the duration of an official term, is expressed by the charter of a corporation, which creates the office, the intent is of course, that on the expiration of the term, authority and duty shall cease. Beyond the expiration of that term, the officer is without right to continue in office. And if in opposition to the proper corporate authorities, he claimed an extension of his official term, and a right to exercise the powers, discharge the duties, and take the emoluments of the office, to the exclusion of another, coming into the office, as he came into it originally, there could be no hesitation in pronouncing him a mere usurper, and trespasser. But suppose the proper authorities neglect to provide for a successor to him, and suffer him to continue in office, discharge its duties—or suppose unforeseen contingencies arise, events which can not be traced to human agency, and there can not be an election or appointment of successors, or such an election or appointment is an idle ceremony, and the corporate body suffer the corporate officers, after the expiration of their official term, to proceed in the exercise of their functions, and the discharge of their duties, who can gainsay it? Who has an interest to gainsay it? There can be no adverse interest except in the State, and in the stockholders, and if the State is passive, and the stockholders ratify, who can be heard to complain? Shall a creditor of the corporation to whom all the security, to which he has a moral or equitable right is afforded by the act he denounces as *ultra vires*, be heard to complain? The duty of the corporation, considering the condition to which it was reduced, and without regard to the inquiry whether the appellant was then, or subsequently became, a creditor, was to reduce its assets to money, for the benefit of all creditors. This is the whole scope of the assignment, the validity of which the appellant assails. If there had been, as the appellant insists, there

[Thorington v. Gould.]

ought to have been, an election of directors on the first day of January, 1866, and it was not competent for the directors elected for 1865, to have authorized and assented to such an assignment, after that day, who could complain if the board of directors of 1865, did just what the board of 1866, ought to have done, if they had been duly elected? Too much stress is in argument laid on the phrase in the charter, that the board of directors should be capable of serving until the end of the first Monday in January ensuing their election, *and no longer*. The phrase expresses only the implication which would have have followed from defining the duration of the official term of the directors. The term of office being prescribed, the due and lawful exercise of official power, would of course cease with the expiration of the term.—Ang. & Ames on Corp. § 288. The theory and principle underlying the recognition of officers *de facto*, and supporting the validity of their official acts, is, that they are wrongfully in office, exercising power legally appertaining only to the rightful officer, but that their acts within the scope of official authority and duty must for the protection and preservation of the rights and interests of third persons be supported. The corporation being insolvent, a duty resting upon it, in the performance of which all its creditors had an interest, was an appropriation of its assets for their equal benefit. So far as the evidence discloses, no creditor had a superior right to preference in payment. Prudence, a sound morality, and a just regard for legal obligations, required that its assets should be placed in a condition to avoid a race of diligence between its creditors, and the "tearing into fragments," of the assets, and the dissipation in the costs of litigation which would have followed its insolvency. We can conceive of no reasonable objection to the directors rightfully in office, when the matter of the assignment was under consideration, and the necessity for it was apparent, the continuance of the existence of the bank not being contemplated or possible, after the expiration of their official term, yielding assent to the assignment, the stockholders assenting that they should, and giving them the reputation of rightful officers. The charter does not denounce as void, the acts of directors continuing in office, after the expiration of their official term. On the contrary, it contemplates the occurrence of such a contingency, and provides for it by authority for the election of a rightful board, at such time as the by-laws of the bank should prescribe. It can not be supposed, that it was the legislative contemplation, if the

contingency occurred, that the bank should remain in a state of suspension, incapable of self-protection, and without authority for the *well ordering of its affairs*, until an election of directors could be had. Whether the directors authorized the assignment before, or after the expiration of their official term, we have no doubt of its validity, and that it passed to the appellee the legal title to the premises in controversy, which it was the duty of the Court of Chancery, to prevent from being clouded by a sale under the levy of the attachment against the bank. Since the submission of this cause, we have been furnished with a copy of the opinion of the Supreme Court of Georgia, rendered in the case of *Milliken v. Steiner*, declaring the validity of the assignment to the appellee. If this cause had been in a condition, in which that decision could have been introduced as evidence, it would have been perhaps our duty to follow it without inquiry or discussion.—*Inge v. Murphy*, 10 Ala. 885; *Sydney v. White*, 12 Ala. 728. We are gratified to have reached the same conclusions, with the court of last resort of the State in which the bank was chartered and located, and the assignment executed.

The decree of the chancellor must be affirmed.