# Moses *v.* Tompkins; Moses *v.* Woodson.

| 84 | 613 |
| 101 | 347 |
| 84 | 613 |
| 143 | 543 |

*Bills in Equity for Injunction, by Stockholders against Directors of Private Corporation.*

1. *Dissolution of injunction, for want of equity in bills or on denials of answer.*—On motion to dissolve an injunction, for want of equity in the bill, the substance only of the allegations must be considered, and all amendable defects must be regarded as amended; and when the motion is based on the denials of the answer, the allegations of the bill are to be taken as true, unless denied, or self-contradictory, and matters in avoidance can not be considered.

2. *Jurisdiction of equity over private corporations; election of directors, or other officers.*—As a general rule, a court of equity will not take jurisdiction, at the instance of a stockholder in a private corporation, merely for the purpose of inquiring into the legality or regularity of an election of officers, or amoving an officer in actual possession; but, when that question arises collaterally and incidentally, an independent and special ground of equity being shown, the court will entertain and decide the question.

3. *Same; injunction against illegal forfeiture of stock on non-payment of assessments.*—If the directors, or other officers, alleged to have been illegally elected, are proceeding to sell and declare forfeitures of stock on account of the non-payment of assessments made by them without authority, this is an independent ground of equity, which gives the court jurisdiction; and the jurisdiction having thus attached, the court will inquire into the legality of their election.

4. *Filling vacancies in board of directors.*—If the majority of the directors of a private corporation, regularly elected by the stockholders, resign, or disqualify themselves by transferring their stock, the remaining directors, being a minority, have no power to fill vacancies thereby created (Code of 1876, §§ 1924, 2024); and the stockholders having no power to elect, except at an annual meeting, they can not ratify such illegal act of the remaining directors at a special meeting.

5. *Officers de facto.*—To constitute an officer *de facto*, there must be color of election or appointment, or an exercise of the functions of the office under such circumstances, and for such length of time without interference, as to justify the inference of a due election or appointment; and it may well be doubted whether the performance of two official acts only, without more, make out a *prima facie* case of an officer *de facto.*

6. *Same; how far their acts are sustained, and who may impeach them.* The acts of officers *de facto* are sustained, on principles of public policy, so far as the rights and interests of third persons are concerned; but, in the case of a private corporation, where persons assume to act as directors without legal authority, making assessments and declaring forfeitures of stock on non-payment thereof, the validity of such acts, and the authority of the alleged directors, may be called into question by the stockholders.

7. *Equitable relief to stockholders, against directors of private corporation.*—A stockholder in a private corporation, or a majority of the stock-

holders, can not come into equity to restrain the action of the directors, whether *de jure* or *de facto*, in a matter not *ultra vires*, unless the corporation itself refuses to act, or is incapable of seeking adequate redress (STONE, C. J., dissenting); but, if an appropriate proceeding has been commenced at law, an injunction may be granted until the termination of that action.

8. *Same.*—Equity will interfere by injunction to restrain trustees and directors from illegally voting certain stock, which they claim the right to vote, when the effect of such vote will be to control the election of directors.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. THOS. COBBS.

R. C. BRICKELL, and ROULHAC & NATHAN, for appellants. The alleged illegal election of directors is the gravamen of the bill; without it there is no equity. The answers deny every material allegation. The injunction should be dissolved.—High on Inj. § 896. An illegal election of directors can not be set up in resistance to the payment of stock, but would be a case for *quo warranto* to oust the illegally elected directors.—Cook on Stocks and Stockholders, p. 111, note 4 and cases cited; 1 Woods R'y Law, § 148. Equity will not interfere by injunction where the acts of the directors are not *ultra vires*.—High on Inj. § 774. The directors are *de facto*, if not *de jure*, directors. Their informal appointment may be ratified by the corporation.—2 Morawetz on Corp. §§ 638, 639, 940.

ROQUEMORE, WHITE & LONG, and KIRK & ALMON, *contra.* 1. The motion to dissolve the injunction for want of equity in the bill raises the inquiry, whether the facts alleged, if well pleaded, make out a case for equitable relief.—*Nathan v. Tompkins*, 82 Ala. 437; 3 Brick. Dig. 390, § 372. And in considering such motion this court will look only to the matters alleged, and consider them well pleaded so far as amendable defects are concerned.—3 Brick. Dig. 352, § 294, *et seq.* 2. If the facts alleged justify the granting of the writ it will be permitted to stand undissolved, unless the facts be fully and completely denied by the answer.—3 Brick. Dig. 352, § 300. Then the rule is not inflexible. 3. Affirmative matter set up in avoidance of admitted allegations of the bill, and not responsive to any averment, will not be considered.—*Nathan v. Tompkins, supra; Farriss v. Houston*, 78 Ala. 250; *Jones v. Ewing*, 56 Ala. 360. 4. On motion to dissolve after answer filed, for want of equity in the bill,

[Moses v. Tompkins; Moses v. Woodson.]

*the facts stated*, and not the manner in which they are stated, nor the form of the bill, nor the specific prayer for relief, should be considered.—3 Brick. Dig. 352, § 302. 5. As a general rule equity will not take jurisdiction for the mere purpose of inquiring into the legality or validity of the election of officers of a private corporation. But such inquiry will be made collaterally if there is independent equity in the bill.—*Nathan v. Tompkins, supra; Johnston v. Jones*, 23 N. J. Eq. 216. One of the principal objects of the present bill is to prevent complainants from being subjected to the loss and worry of a multiplicity of law suits with purchasers at a sale made by directors alleged to be illegally in office—to prevent loss and destruction from illegal acts of parties proceeding by color of office. This phase of the bill gives it equity independent of the charges of fraud and combination on part of the respondents to defeat the fundamental right of control resting in complainants as majority shareholders of the capital stock of said corporation. The calls and assessments upon the stock could be made only by the directors.—1 Morawetz on Corp. § 536. Respondents are certainly not the directors, excepting A. H. Moses and A. H. Kellar. If the other members of the board had by their own acts ceased to be directors the remaining ones, Kellar and Moses, could not fill the vacancies.—Code (1876) § 2020. This section means by majority; the majority of the board, and not, as contended by appellants, the majority of the directors. The subsequent ratification by the stockholders in August, 1887, did not cure the defect. Ratification could not legalize an act that the ratifiers could not originally perform. A single shareholder can go in to equity for the protection of his stock.—1 Morawetz on Corp. § 256. An appeal to the governing body first to act would be useless.

CLOPTON, J.—The appeal in each of the above stated cases, is taken from a decree of the chancellor, overruling a motion to dissolve a temporary injunction, the motion being rested on want of equity in the bill, and on the denials of the answer. The appeals were submitted, and will be considered together, involving mainly questions in common. The bills are filed by appellees, as shareholders of the Sheffield & Tuscumbia Street Railway Company, and seek to enjoin appellants, who claim to be directors of the corporation, from selling the stock of complainants for the payment of assess-

ments and calls thereon; from making other calls; and from constructing, with material belonging to the corporation, a line or branch of the railway from the Memphis & Charleston railroad to the main line of the company. When the motion to dissolve an injunction is founded on the ground, that the bill is wanting in equity, the substance, the facts stated, and not the manner in which they are alleged, must be considered; all amendable defects should be regarded as amended; and when the motion is based on the denials of the answer, the allegations of the bill will be taken as true, unless contradictory of each other, or positively denied; matter in avoidance can not be considered. Though generally, when the answer fully and unequivocally denies the material allegations of the bill, the injunction will be dissolved, the rule is not inflexible. The injunction will not be dissolved, if any circumstances are apparent, which called for a departure from the general rule. We eliminate from consideration all matters not proper to be considered under these rules.

It is insisted, that there is no independent equity in the bill, separate from the question of the legality of the election of the defendants. As a general rule, courts of equity will not take jurisdiction for the mere purpose of inquiring into the legality of the election of officers of a private corporation, nor of moving from office an officer in actual possession. In such case, a complaining shareholder must resort to the remedies at law—an action of *quo warranto*, or the special proceedings provided by statute. But when an independent and special ground of equitable interposition, on which the court may take rightful jurisdiction, exists and is shown, it will inquire into the legality of the election, coming in question collaterally and incidentally.—*Nathan v. Tompkins*, 82 Ala. 437.

The bills, as we interpret them, do not solely and primarily invoke the jurisdiction of the court to inquire into the legality of the election of the directors, nor to vacate their offices. The first special equity is to prevent the sale of the stock of the complainants for the payment of an assessment and call made and ordered by the defendants in the capacity of directors, who it is alleged, were not legally elected or appointed, to prevent a threatened injury to a pecuniary right, which, if consummated, will subject complainants to a multiplicity of suits, and to litigate their title to the stock under the disadvantages of embarrassment and complication

by the claims of third persons, who may become purchasers thereof. The special equity is, that persons, assuming to act as directors without legal authority, are proceeding *colore officii* to do acts which will, primarily and directly, destroy or impair the property rights of complainants as stockholders. In order that an assessment and call for the payment of subscriptions to the capital stock of a corporation may be legal and enforceable, it must, ordinarily, be made by the corporate authorities, in whom the power is vested by the charter, or by-laws, or by the general laws. In *Garden G. U. Q. Min. Co. v. McLister*, 1 L. R. App. Cas. 39, a bill was filed to declare invalid a forfeiture of stock for the non-payment of calls, made by directors alleged to have been illegally elected. The question of the validity of the forfeiture ultimately depended on the validity of the election of the persons, who, assuming to be directors, declared complainants' shares forfeited for non-payment of a call made by them. The bill was sustained; the declaration of the forfeiture declared invalid; and it was held that there must be properly appointed directors to make a call, and to declare a forfeiture of shares for non-payment. It has also been held in other cases, that the illegality of the election of the persons, who, as directors, make a call, may be set up in resistance to a suit for its recovery.—*People's Mut. Ins. Co. v. Wescott*, 14 Gray, 440. To prevent irreparable mischief, multiplicity of suits, the destruction and impairment of the pecuniary rights of the stockholders, equity will interfere, at the instance of a stockholder, and restrain the sale of his stock for the payment of a call made by illegally elected or appointed directors. The validity of the election of defendants, as directors, arises collaterally and incidentally, and the duty to inquire into and decide the question is necessarily involved.

The company was incorporated in January, 1887, under the general laws; and at the first meeting of the stockholders, seven directors, being the number provided for by the by-laws, were elected, consisting of McMillan, Hull, Swartz, Russell, Almon and the defendants A. H. Moses and A. H. Kellar. By the by-laws and the statutes, their terms of office continued until the annual meeting of the stockholders in April, 1888, and until their successors were elected and qualified.—Code, 1876, § 1923. The by-laws further provide: "No person shall be elected, and if elected, shall serve as a director, who does not own in his own name and right

at least ten shares of stock in the company, and who shall have held said stock continuously since, at least, the preceding annual election of directors." McMillan, Hull, Swertz and Russell sold their stock, and Almon sold all of hi. except four shares, thereby disqualifying themselves for serving as directors. In consequence thereof, Moses and Kellar, remaining directors, elected in May, 1887, their co-defendants Nathan, Samuel Kellar, M. L. Moses and A. J. Moses to fill the vacancies. We shall not inquire whether such self-disqualification, and the failure to act as directors thereafter, were tantamount to a formal resignation, and operated to create a vacancy. Were such result conceded, the question still remains, did the two remaining directors have authority to fill the vacancy? By the by-laws, a majority of the board of directors constitute a quorum for the transaction of business; and by statute, "where the corporate powers are directed to be exercised by any particular body, or number of persons, a majority of such body or persons, form a board for the exercise of such powers."—Code, 1876, § 2024. And, in special reference to the incorporation of "Street Railroad Companies," the statute, after providing for the election of directors, at the first meeting of the incorporators, expressly provides: "A majority of such directors shall form a board, and be competent to fill vacancies in their board, make by-laws, and transact all business of the corporation." Code, 1876, § 1924. It is manifest from the provisions of the by-laws and the statutes, that no number of directors, less than a majority acting as a board, is empowered to transact the business of the corporation or to fill vacancies in the board.

The next question is, does the ratification of their election by the stockholders, at the meeting in August, 1887, legalize and validate their appointment? It is unnecessary to inquire, whether or not the meeting was called by proper authority, and in a legal manner, or whether or not the requisite majority of stock was represented; in either event 'the result is the same. It was a special, as distinguished from an annual meeting. By the statutes, the stockholders are authorized to elect directors at the meeting called, in the first instance, for the organization of the company, and annually thereafter at such time and place, as the stockholders at their first meeting shall determine, or as the by-laws of the corporation may require.—Code, 1876, §§ 1924, 1925. Vacancies occurring in the board of directors, in the meantime, are to be

filled by the board.   When the charter of a private corpora-
tion, or the general laws invest the board of directors with
the power to transact the business of the corporation, to
manage its affairs, and to fill vacancies occurring in the
board, the power is exclusive in its character.—*Gashwiler v.
Willis*, 33 Cal. 11. Had the persons elected by Moses and
Kellar to fill the vacancies been originally elected by the
stockholders, at the meeting in August, 1887, the election
would have been invalid; and the stockholders can not ratify
an act which they have no power to do originally.   When
the board of directors was reduced below the number
requisite to form a quorum, its power as a board to fill the
vacancies was suspended.   If it be said, that a corporation
may thus be left without proper officers or agents to manage
its affairs and transact its business, it may be replied, that
such state of things need exist only until a meeting of the
stockholders at which they are authorized to elect a full
board; and there may be other remedies which it is needless
to point out.   A board of directors is not essential to the
existence of a corporation.   The failure to hold annual meet-
ings, or to elect directors regularly, does not operate a for-
feiture of the corporate franchises; those in office hold until
the election or appointment and qualification of their succes-
sors.   The corporation exists *per se* for the purpose of per-
petual succession and of preserving its franchises.—Code,
1886, §§ 1679–1681.   The condition of the Sheffield & Tus-
cumbia Street Railway Company is somewhat anomalous,
and presents a *casus omissus*, a contingency not contem-
plated or provided for, but which may have been supplied by
the provision of section 1610 of Code of 1886 that "vacan-
cies occurring in the board must be filled by the remaining
directors;" but as to this we express no opinion, since the
present cases do not fall within its provision.

It is further insisted, that though the persons appointed
to fill the vacancies were not legally elected, they are actually
holding and exercising the powers and functions of the
office, and are directors *de facto;* and inasmuch as the power
to make assessments and calls is vested in the board of di-
rectors, a call made by directors *de facto* can not be collat-
erally called in question by a stockholder.   To constitute an
officer *de facto*, there must be a color of election or appoint-
ment, or an exercise of the functions of the office under such
circumstances and for such length of time without interfer-
ence, as to justify the presumption of a due election or ap-

pointment.—*Cary v. State*, 76 Ala. 78. The mere exercise of the functions of the office is in itself insufficient. The bills allege only two official acts of the defendants as directors, and it may well be doubted whether the allegations make a *prima facie* case of directors *de facto*. The facts set up in the answers, on which this claim is rested by the defendants, can not be considered on a motion to dissolve the temporary injunction. But passing this question, we shall proceed to consider the right of a stockholder to set up the illegality of the election, though the persons may have become directors *de facto*, in resistance to an assessment and call on subscriptions to the capital stock. We are cognizant that some courts of the highest authority have held, that the power of persons to act in behalf of the corporation, who have become directors *de facto*, can not be collaterally questioned by a stockholder, without a judgment of ouster against them in a direct proceeding for that purpose. An analysis of the cases would show, we think, that in a majority of them the election was not illegal and void, but irregular and voidable, because of ineligibility, or other cause, or if originally illegal, that the shareholder assailing its validity, had affirmatively acquiesced in their acts as directors. The doctrine of the validity of the acts of officers *de facto* rests on public policy and justice. The official dealings of directors *de facto* with third persons are sustained as rightful and valid, on the ground of continuous acquiescence by the corporation, and suffering them to hold themselves out as having such authority, thereby inducing others to deal with them in such capacity. The theory of the doctrine of officers *de facto*, and the principles sustaining the validity of their official acts, are that, though wrongfully in office, yet exercising power and functions appertaining to such office, justice and necessity require for the protection and preservation of the rights and interests of third persons, that their acts, within the scope of official authority and duty, shall be sustained. The stockholders are not third persons in their relation to the corporation. If persons undertake to exercise the functions and discharge the duties of directors in opposition to the will of a majority of the stockholders, they are mere usurpers, and their acts can not be deemed valid, when invoked for their own protection. Otherwise, the wrongful assumption of official authority and its exercise would operate to constitute the usurpers, as *between themselves and the corporation and shareholders*, a board invested with the power

to transact its business and administer its affairs. In such case, the necessity and justice of the rule as to the validity of the acts of directors *de facto* do not exist, and the rule itself is inapplicable. The acts of officers *de facto* are only valid, when third persons have rights and interests to be protected. By the terms of their contract an assessment or call, made by directors duly appointed, is essential to create a liability on the stockholders. The validity of the acts of directors *de facto* and their authority may be called in question by a stockholder, whenever such acts are destructive or affect his property rights, or impose a liability on him as such, and the rights of third persons do not intervene.—*Thorington v. Gould*, 59 Ala. 461; *People's Mu. Ins. Co. v. Wescott, supra.*

The bill filed by Tompkins, referring to the defendants, alleges: "That said individuals claiming to be and to constitute the directory of said company, have resolved to build a branch road or track from the Memphis & Charleston Railroad in Tuscumbia, Alabama, *via* Dickson & Fourth streets, using certain property of the corporation in its construction. Orator avers that the said parties are not the directors of said company, nor are they authorized to use or expend the property or effects of the corporation in constructing such branch, or in any other manner. He avers, that such action is against the will and approbation of the holders of the majority of such capital stock, and is not beneficial to said corporation, or the stockholders thereof." The other bill contains substantially the same averments. It will be observed, that it is not charged that such acts are *ultra vires*, or in violation of the chartered privileges and powers, or constitute a breach of trust. In this aspect, the bill merely presents a case of internal disputes and unfortunate and injurious dissensions. Admitting the truth of the allegations, such use of the property and effects of the corporation is a conversion, an injury to the company, fastening a personal liability on the defendants, and redress for which should be primarily sought in the name of and by the corporation, and for which adequate legal remedies are provided. Equity will not interfere, at the instance of a stockholder, with the internal business management of a corporation by the directors, whether *de jure* or *de facto*, so long as it is kept within the scope of the chartered powers and the purposes of its creation, unless such administration of its affairs is destructive or injurious to the corporation, and the corporation itself refuses, or is

incapable to seek redress. The only ground on which the interference of the court is invoked is, the illegality of the election of the defendants, and that their management does not accord with the will and approbation of a majority of the stockholders. To enjoin the defendants from any use of the property and effects of the corporation would, under the circumstances, be tantamount to their amotion from office. The complainants in the two bills, who are in accord and cooperating, claim to hold and own a majority of the capital stock. There is, therefore, no excuse for not seeking a remedy within and by the corporation. Had it been averred that the complainants, or either of them had instituted an appropriate proceeding under section 3170 of Code of 1886, or the corresponding section of Code of 1876, or a *quo warranto*, to exclude from office the defendants unlawfully holding and exercising the office of directors, it may be that a court of equity would have enjoined them from using or appropriating any of the property and effects of the corporation in any manner, and from performing the functions of the office until the determination of the action.

The bill filed by Tompkins alleges, that he purchased the twenty shares of stock subscribed by Scott, paying therefor a valuable consideration, and had the same transferred to him on the stock-book of the company. This makes a case of *prima facie* ownership, and of the incidental right to vote the stock. The defendants set up in their answer an agreement between Scott and others, by which this stock was to be voted by trustees. The character of this contract was considered at the present term, in another case between A. H. Moses and Tompkins, and was held to be voidable, and to have been avoided by Scott, when he sold and transferred the stock. The bill further alleges the purpose of the trustees to vote the stock in a particular way, and that the effect of the vote will be to control the election of the directors. Under the circumstances, we think the injunction as to this matter should be retained until the final hearing of the case.

The decree of the chancellor is modified so far as it continues in force the injunction against using the property and effects of the company in constructing the branch road; and a decree here rendered dissolving the injunction to this extent. The decree of the chancellor, as thus modified, is affirmed.

[Moses v. Tompkins; Moses v. Woodson.]

STONE, C. J.—My own opinion is, that when the board of directors was reduced to two out of seven members, the corporation was without power to discharge any corporate function, save, perhaps, to convene the stockholders, for the purpose of electing other directors, or making provision therefor. I am clearly convinced, and do not think my brothers differ with me in this, that the attempt made to fill the board of directors by the remaining two, was utterly without authority, and confers on the persons attempted to be appointed, no legal power to act as such.—*People v. A. & S. R. R. Co.* 55 Barb. 344; *State ex rel. v. Smith,* 48 Vt. 266. I further hold, that any disposition made of the funds of the corporation, by this irregularly constituted board, is a conversion by them, and, if done in obedience simply to the orders of such board, it will fasten a personal liability on them.

Taking the averments of the bill to be true, I think they present a sufficient excuse for not appealing for relief to the corporate authorities, if corporate authorities there be capable of rendering relief. To ask the only two remaining directors to take steps to prevent themselves from doing authorized acts, would certainly present an anomaly. Injunction is the only efficient remedy, and I think it should be retained, until the rehabilitation of the corporation can be perfected by legitimate methods. I dissent from so much of the ruling of my brothers, as modifies the injunction.—*Pender v. Lushington,* L. R. 6 Ch. Div. 70.