## APPEAL OF FIDELITY TRUST CO.

Docket No. 4920.    Decided July 27, 1926.

1. The Board, having jurisdiction of the subject, must consider all matters necessary to the exercise of jurisdiction.

2. Officers and directors of a corporation are not the agents of the individual stockholders and have no control over their individual stock holdings.

3. The fact that a majority of the directors of a corporation resign and the board by election substitutes directors of another corporation is not sufficient to give the second corporation statutory control.

4. The statute recognizes no qualification of the word control, such as legal control or actual control.

5. The full management or control of the corporate and business affairs of one corporation by another is not sufficient to constitute statutory control.

6. The fact that one corporation claiming to control the stock of another has voluntarily imposed upon itself restrictions upon the exercise of such control does not prove that control did not

exist. The control depends upon the power of another to obstruct its exercise.

7. On March 22, 1920, the president of the taxpayer made an offer to the president of another corporation to purchase the capital stock of the latter by the issuance of its stock in exchange therefor, on the condition that the holders of 80 per cent thereof signify their assent to the sale by depositing, within 30 days, their stock with the taxpayer as trustee, and the further condition that the offer be approved, and authority to issue additional stock be given, by stockholders of the taxpayer. On April 10, 1920, the prescribed 80 per cent of the stock had been deposited. On June 2, 1920, the stockholders of the taxpayer ratified the purchase agreement and approved the necessary increase in capital stock. *Held*, that the two corporations were affiliated on and after April 10, 1920.

8. *Quære:* Whether all corporations involved in a question of affiliation are proper parties in a proceeding before the Board?

*Samuel B. Pack, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, for the Commissioner.

### BEFORE STERNHAGEN, LANSDON, and ARUNDELL.

The Commissioner determined that the petitioner was affiliated with the Logan Trust Company on and after June 2, 1920. The petitioner claims affiliation on March 22, 1920. There is in controversy only so much of the total deficiency of $64,560.70 for the fiscal year ended January 31, 1921, and the subsequent period to December 31, 1921, as depends upon the correct determination of the period of affiliation.

#### FINDINGS OF FACT.

The Logan Trust Company is a Pennsylvania corporation organized in 1906. The Fidelity Trust Company is a Pennsylvania corporation organized in 1866.

In December, 1919, the Pennsylvania banking department found that the capital of the Logan Trust Company was impaired. The directors made this good. Deposits decreased, and from January 1, 1920, to March 22, deposits dropped about 25 per cent. The company had reached the end of its borrowing power. This situation was known to the directors of the Logan Trust Company. The stockholders did not know it.

A few days before March 22, 1920, the president of the Logan Trust Company and the president of the Fidelity Trust Company were in negotiation about the acquisition by the Fidelity Company of the stock of the Logan Company. The Fidelity Company was not a creditor of the Logan Company. The directors of the Fidelity Company had appointed a committee to consider the matter and an

examination of the Logan Company's affairs was made on March 20 and 21. The securities were examined but not checked in detail. Their value was difficult to determine. At the time of the negotiations the president of the Fidelity Company was told that the value of the Logan Company stock was $90 or $100 a share, which he did not verify. It ultimately turned out to be very much less.

The reason why the Fidelity Company was interested in negotiating with the Logan Company was that it needed an office at this location and the Logan Company's building and land suited its need; and also that the clientele and good will were believed to be desirable. These advantages were believed sufficient to justify a risk.

At a meeting of the board of directors of the Fidelity Company on March 19, 1920, the president " stated he was in negotiations with Mr. Walter H. Lippincott, president of the Logan Trust Company. relative to having this company take over the Logan Trust Company, and if the matter met with the approval of this board he would like permission to appoint a committee consisting of members of this Board with power to act." And it was " resolved that the president be empowered to appoint a committee consisting of members of this board with full power to continue negotiations for the stock of said Logan Trust Company."

The Logan Company directors at a meeting March 20, 1920, authorized the president " to negotiate with William P. Gest, president of the Fidelity Trust Company, for the purchase of the capital stock of our company at $100 per share or better on a basis of the exchange of stock for the Fidelity Trust Company at $500 per share."

On March 22, 1920, the president of the Fidelity Company wrote the following letter to the president of the Logan Company:

On behalf of the Fidelity Trust Company, I hereby offer, through you, to the stockholders of the Logan Trust Company of Philadelphia, to purchase their stock at par, the purchase price to be payable in stock of the Fidelity Trust Company at the rate of $500 per share, this offer being made upon the express conditions—

First: That it shall be accepted by the holders of 80% of the par value of the stock of the Logan Trust Company of Philadelphia within thirty days from the date hereof, such acceptance to be evidenced by the deposit with the Fidelity Trust Company, as Trustee, under a Deposit Agreement to be approved by it, of their Certificates of Stock, duly endorsed for transfer, and

Second: That the offer shall be approved, and a sufficient increase of the stock of the Fidelity Trust Company authorized by the stockholders of said Company at a meeting duly called for that purpose.

This offer if accepted by you shall be made a continuing offer to the Stockholders of the Logan Trust Company of Philadelphia for the time above set forth.

This letter was on March 22, 1920, presented by the president at a meeting of the board of directors of the Logan Trust Company held at 8.30 a. m., at which "the offer as contained in the above letter

* * * was unanimously accepted." At this meeting it was resolved " that the board of directors of this company does hereby recommend to each and every of the stockholders of this company the acceptance of the offer of the Fidelity Trust Company to purchase their stock at par, purchase price to be payable in stock of the Fidelity Trust Company at the rate of $500 per share, and that they deposit their stock forthwith with the Fidelity Trust Company as Trustee under the terms of a deposit agreement to be in such form as may be approved by the officers of this company as now constituted." And it was also resolved that certain directors " be appointed as a committee to present the offer to the stockholders and use their best efforts to solicit and obtain the deposit and sale of their stock in accordance with the terms of the offer." And it was also resolved " that in all cases in which this company is trustee for any estate, or in any other capacity shall hold any of the stock of the Logan Trust Company of Philadelphia as part of the trust estate, that this company, as such trustee, does accept the offer made by the Fidelity Trust Company for the purchase of said stock, and that the officers of said company as such trustees be authorized and directed to deposit same under deposit agreement which may be provided for that purpose under terms of said offer, and to accept shares of Fidelity Trust Company in exchange therefor." At this meeting two of the Logan Company directors resigned from the board and the president and vice president of the Fidelity Company were immediately elected by the board as directors. The president and vice president of the Logan Company resigned and these two new directors were immediately elected president and vice president. On the same day, March 22, 1920, another meeting of the board of directors of the Logan Company was held at three o'clock, and at this meeting seven of the directors resigned and their places were immediately filled by the election by those present at the meeting of persons who were at that time directors or officers of the Fidelity Company. The board of the Logan Company was composed of sixteen members and after the foregoing meetings on March 22nd there were nine persons acting as such directors who were directors or officers of the Fidelity Company.

It was understood by the president of the Fidelity Company in the negotiations with the president of the Logan Company that the Fidelity Company should have a free hand in the organization of the Logan Company; that there was no obligation to retain any members of the board or any of the officers; that having assumed the responsibility in a failing institution the Fidelity Company should have what they regarded as commensurate authority; that they should have complete control. A portion of the old board was retained as a matter of policy in order to retain the good will and clientele of the Logan Company. Retaining the directors and officers

of the Logan Company was entirely in the discretion of the Fidelity Company. The executive officers of the Fidelity Company were elected as directors of the Logan Company in order to put the actual management in the hands of the Fidelity Company. The president then regarded the Fidelity Company as in absolute control of the Logan Company. From March 22, 1920, until June 2, 1920, the new officers and directors of the Logan Company who were connected with the Fidelity Company received their salaries from the Fidelity Company and there was no charge for their services against Logan funds. The principal officers spent nearly all their time in connection with the affairs of the Logan Company.

The by-laws of the Logan Company provided that the annual meeting of the stockholders be held on the second Thursday of December, and special meetings might be called whenever the board of directors should direct or at the request of the owners of one-third of the capital stock. All stockholders' meetings required ten days' notice by the secretary, published in at least two daily newspapers, and at least five days' notice given personally or by mail.

At a special meeting of the board of directors of the Fidelity Company March 22, 1920, 12 o'clock noon, the president stated " that with the approval of the committee appointed by the board at its last meeting to consider the advisability of acquiring the stock of the Logan Trust Company, he made a proposal to the president of that company, offering on behalf of the Fidelity Trust Company to purchase from stockholders of the Logan Trust Company their stock at par, the purchase price to be payable in new stock of the Fidelity Trust Company at the rate of $500 per share, the offer being conditioned upon its acceptance within thirty days by holders of at least eighty per cent at par value of the stock of the Logan Trust Company; and further, that the stockholders of this company shall approve the offer and authorize the increase of stock necessary to complete the transaction." The president read his letter of March 22nd above set forth. Thereupon, the board adopted the following resolution:

That the offer of the president of this company made on its behalf to Mr. Walter H. Lippincott, president of the Logan Trust Company, to purchase the outstanding capital stock of that company from the holders thereof, as set forth in his letter of this date read at this meeting, be and the same is hereby ratified and approved, and the officers of this company are hereby authorized and directed to take such steps as may be necessary to complete the transaction in accordance with the terms and conditions of said offer.

On March 22, 1920, the following announcement was published in the Philadelphia Public Ledger:

Announcement is made by the Logan Trust Company of Philadelphia that the Fidelity Trust Company has made an offer to purchase and acquire all

of the Stock of the Logan Trust Company of Philadelphia, which will transfer unto the Fidelity Trust Company the management of the Logan Trust Company of Philadelphia.

In accordance with the terms of the arrangement which has been made, Mr. Wm. P. Gest, President of the Fidelity Trust Company, and Mr. J. C. Neff, Vice President of the Fidelity Trust Company, will be elected President and Vice President, and Members of the Board of Directors of Logan Trust Company of Philadelphia, at a meeting to be held this morning, thus turning over to the Fidelity Trust Company at once, the management and control of the Logan Trust Company.

According to the terms of the offer, stockholders of Logan Trust Company will receive one share of Fidelity Trust Company for every five shares of Logan Trust Company or of their holdings.

Under date of March 22, 1920, the following agreement was made:

AGREEMENT DATED MARCH 22, 1920, BETWEEN

WALTER H. LIPPINCOTT et al.

and the

FIDELITY TRUST COMPANY

for the deposit of the

Capital Stock of the Logan Trust Company

of Philadelphia.

AGREEMENT made this 22d day of March, 1920, between WALTER H. LIPPINCOTT, HUGH McILVAIN, ROWLAND COMLY, GEORGE M. BUNTING, and CHARLES MAJOR, as Managing Committee for Stockholders of Logan Trust Company of Philadelphia, parties of the first part, FIDELITY TRUST COMPANY, of the City of Philadelphia, a corporation duly incorporated under the laws of the State of Pennsylvania, as Trustee, (hereinafter called the "Trustee") of the second part, and such holders of the capital stock of Logan Trust Company of Philadelphia, a corporation of the State of Pennsylvania, as may become parties hereto by depositing their stock as hereinafter provided (hereinafter called the Depositors) of the third part, Witnesseth:

Fidelity Trust Company has made an offer to purchase from the respective holders thereof all the capital stock of Logan Trust Company of Philadelphia, at the price of $100 per share, payable in stock of said Fidelity Trust Company at the rate of $500 per share, subject to the condition (a) that this offer be accepted by the holders of 80% of the capital stock of said Logan Trust Company of Philadelphia and such assent be evidenced by the deposit of their stock under the terms of this agreement; and (b) that said offer be approved by the stockholders of the Fidelity Trust Company and the necessary authority for the increase of the capital stock of that company be given by them. In consideration of the premises and for the purpose of carrying into effect the provisions of said offer, it is hereby agreed as follows:

1. All holders of the capital stock of Logan Trust Company of Philadelphia, up to the amount of One Million Dollars ($1,000,000) par value thereof, may

become parties to this agreement by depositing their certificates of stock as hereinafter provided with the Trustee on or before 3 o'clock P. M. on the 21st day of April, 1920. This time may be extended by the Trustee with the consent in writing of the Committee, but not later than the first day of June, 1920.

2. All certificates of stock so deposited must be duly endorsed for transfer in blank or accompanied by proper transfers in blank thereto attached with the signature of the transferrer guaranteed in the usual manner and accompanied by the proper Internal Revenue stamps, which may be uncancelled and unattached. If and when this agreement becomes operative, said stamps shall be duly cancelled and the several depositors hereby authorize the Trustee in their behalf to cancel the same. If this agreement should not become operative, all such stamps shall be returned with the certificates to the holders of the receipts for said certificates as hereinafter provided.

3. Upon the deposit of any certificate or certificates for stock, the Trustee will deliver unto the depositor, in exchange therefor, its receipt, which shall be negotiable, and may be transferred by endorsement and delivered merely, and by the acceptance thereof and by transfer of the same the depositor and any transferee becomes bound by all the terms, conditions and provisions of this agreement. Said receipt shall be substantially in the following form:

No____                                                    _____Shares.

FIDELITY TRUST COMPANY,

325 Chestnut Street, Philadelphia, _____, 1920.

FIDELITY TRUST COMPANY, TRUSTEE, acknowledges to have received from_____shares of the capital stock of Logan Trust Company of Philadelphia this day deposited and received under and in accordance with the terms of an agreement for the deposit thereof made between Walter H. Lippincott and others and Fidelity Trust Company, Trustee, dated the _____ day of March, 1920, and on file in the office of this company and of Logan Trust Company of Philadelphia. By the deposit of said stock and the acceptance of this receipt, the depositor, and upon the transfer hereof, the transferee, becomes a party to said agreement and is entitled to all the benefits thereof and is subject to the terms and conditions therein set forth, to which agreement reference is hereby made for the terms and conditions upon which said deposit is made and the rights of the holders of this receipt thereunder. This receipt shall be negotiable by endorsement and delivery thereof, but no new receipt will be issued to the transferee.

In case the agreement of purchase contained in said agreement becomes operative in accordance with its terms, the holder hereof will be entitled to receive, upon presentation and surrender of this receipt at the office of this company, stock of Fidelity Trust Company of the par value of one hundred dollars, at the rate of one share of said stock of Fidelity Trust Company for five shares of stock of said Logan Trust Company of Philadelphia, provided, however, that if this receipt be for less than five shares of said stock of Logan Trust Company or an amount not exactly divisible by five, then the holder hereof shall only be entitled to receive nondividend bearing scrip certificates for said odd shares of stock which shall be exchangeable for shares of stock of Fidelity Trust Company when thereafter presented together with other scrip certificates entitling the holder in the aggregate to one or more full shares of stock of said Fidelity Trust Company.

50144°—27——30

In case the offer of purchase as contained and set forth in said agreement shall not become operative on or before the 15th day of June, 1920, the holder of this receipt shall be entitled to the return and redelivery of the shares deposited and specified herein, upon presentation and surrender of this receipt for that purpose at the office of this company.

FIDELITY TRUST COMPANY, <em>Trustee</em>,

By _____

4. No transfer of any of the deposited stock shall be made upon the books of the Logan Trust Company unless and until the conditions of the offer for purchase of said stock have been fulfilled and the agreement of purchase has become absolute, nor, in any case, prior to June 2, 1920, and the depositors shall be entitled to have, receive and take for their own use, respectively, any dividend on the stock deposited hereunder which may be declared prior to said 2d day of June, 1920, whether the agreement of purchase becomes operative or not, and no depositor shall be entitled to withdraw his stock or to the return thereof unless and until this agreement becomes inoperative according to its terms.

5. If within the time herein limited, or any extended time, the amount of stock deposited hereunder shall equal 80% of the total outstanding capital stock of Logan Trust Company of Philadelphia, and which total outstanding stock shall not exceed ten thousand (10,000) shares, and if on or before the tenth day of June, 1920, the stockholders of Fidelity Trust Company shall approve of the purchase and acquisition of the stock of Logan Trust Company upon the terms hereinabove set forth, and the necessary increase in the capital stock of Fidelity Trust Company be duly authorized, this agreement and the offer for the purchase of said stock shall immediately become operative and the Trustee shall at any time, on or after the fifteenth day of June, 1920, deliver to the holders of the negotiable receipts issued hereunder shares of the capital stock of Fidelity Trust Company upon the surrender and delivery of said receipts at its office, 325 Chestnut Street, in the City of Philadelphia, in the proportion of one share of stock of the Fidelity Trust Company of the par value of one hundred dollars ($100), in exchange for each five shares of the stock deposited hereunder; provided, however, that no certificate for a fractional share of said stock shall be issued by said Fidelity Trust Company and that the holders of said receipts who may be entitled under the terms of said offer of purchase to fractional parts of a share of stock of Fidelity Trust Company shall receive a certificate in such form as may be satisfactory to said Fidelity Trust Company, which shall not entitle the holder thereof to any voting power thereof or to participate in any dividends declared by said Fidelity Trust Company, which shall be exchangeable, when presented with other certificates for fractional parts of a share entitling the holder in the aggregate to one or more full shares, for such full shares of said Fidelity Trust Company.

The Trustee agrees with each of the depositors and holders of said receipts, in case the agreement of purchase becomes operative, to duly execute and deliver the shares of stock and certificates herein provided for.

6. In case the amount of stock deposited hereunder at the date herein limited, or any extended date, be not equal to 80% of the total outstanding stock of Logan Trust Company, or if, notwithstanding such amount be deposited, the offer of the Fidelity Trust Company to purchase said stock be not approved by its stockholders, or the necessary increase of stock authorized by them, on or before the tenth day of June, 1920, then this agreement and the

offer of purchase upon which the same is based shall, unless declared operative under the provisions of paragraph 8, forthwith become null and void, and the stock deposited hereunder shall be returned and redelivered to the holders of the receipts therefor upon presentation and surrender of the same at the office of the Trustee.

7. The Trustee shall not be liable for any act, matter or thing done by it in good faith in the performance of this agreement, save only for the receipt, care, custody and delivery in accordance with the terms of this agreement, of the certificates of stock deposited with it for the certificates of its own stock in case the same become deliverable hereunder. It shall not be obliged to inquire into the genuineness or validity of any certificate of stock offered to it for deposit hereunder, nor into the validity of the transfer thereof or of the title of the transferrer, or the power to transfer the same, or the genuineness of the signature thereto, but the presentation and deposit with it of any certificate believed by it to be genuine and properly transferred shall be full warrant and authority for the issue of its receipt therefor. It shall not be liable for any delivery made by it of any of said stock to the holder of any of its receipts issued therefor, if and when the stock shall become returnable to the holders of said receipts under the provisions of this agreement, and shall not be bound to inquire as to the title of any such receipt of the person presenting the same, nor as to the genuineness or validity of any endorsement thereon or transfer thereof, but the return of any certificate or certificates of stock to the amount called for in any such receipt to the holder thereof upon presentation as and when under the terms of this agreement the said stock is returnable to such holder, shall be a full discharge of the Trustee from all liability with respect thereto. The Trustee shall not be bound or obliged to give any notice to any depositors or holders of the receipts issued by it with respect to any matter or thing which is the subject matter of this agreement, but may, in its discretion, give such notice to the depositors or holders of the receipts issued by it, but in case the Trustee elects so to do, it shall, nevertheless, not be liable for and failure to give such notice to any depositor or holder of said receipts.

8. Notwithstanding less than 80% of the outstanding stock of Logan Trust Company shall be deposited under this agreement, the Trustee may at its sole option declare this agreement to be operative by notice in writing to the Committee, and thereupon the same shall be and become operative with like effect as though the requisite number of shares hereinbefore provided had been actually deposited hereunder.

9. No notice shall be required to be given to any of the depositors with respect to any of the terms or provisions of this agreement or the things to be done thereunder, but in case either the Trustee or the Committee shall elect to give any such notice, the same shall be sufficiently given by publication twice in one week in two newspapers of general circulation, published in the City of Philadelphia. Either the Trustee or the Committee may, however, give such other notice by mail or otherwise as it or they may think proper, but shall not be liable in any wise for any failure to give notice to any depositor or holder of said receipts.

10. Duplicate originals of this agreement shall be signed by the parties of the first and second part and one copy thereof lodged with the Trustee and the Committee, but it shall not be necessary that any copy thereof be signed by any of the depositors.

In Witness Whereof, the said parties of the first and second part have caused these presents to be duly executed by them, and the parties of the third part

have become parties hereto by the deposit of their stock as hereinbefore provided.

(Signed)     WALTER H. LIPPINCOTT,     [SEAL.]
(Signed)     HUGH McILVAIN,     [SEAL.]
(Signed)     ROWLAND COMLY,     [SEAL.]
(Signed)     GEO. M. BUNTING,     [SEAL.]
(Signed)     CHAS. MAJOR,     [SEAL.]
Managing Committee.

FIDELITY TRUST COMPANY,

By (Signed)     WM. P. GEST, President.

Attest:
(Signed)     JOS. McMORRIS, Secretary.

On March 22nd the members of the old board of directors of the Logan Trust Co. immediately assigned among themselves the names of the stockholders whom they would undertake to persuade to deposit their stock in accordance with the agreement. The stock was held by many people, all of whom were members of the Society of Friends. It had been originally issued to the personal friends and families of the directors and it was still principally in the hands of the original holders. The directors believed on March 22nd that they would have no difficulty in securing the deposit of all of the stock. All the stockholders, as soon as the situation was described to them, agreed to deposit their stock and no question or difficulty was raised. The directors of the Logan Company immediately indicated their intention to sell their holdings under the agreement and their stock was the first to be deposited.

The president and vice president of the Fidelity Company had no doubt that the arrangement would go through. The president would not have made the agreement unless he had confidence that it would go through, and he believed that the offer of the Fidelity Company was so liberal to the stockholders of the Logan Company and their need was so pressing that there was no practical doubt of the consummation of the plan.

The total capital stock of the Logan Company outstanding on March 22nd was 10,000 shares of $100 par value. The capital stock of the Fidelity Company at this time was 50,000 shares of $100 par value.

On March 22, 1920, the stockholders of the Logan Trust Co. began to deposit their stock with the Fidelity Trust Co. under the agreement, and the aggregate number of shares on deposit at the close of each day is as follows:

| | Shares. | | Shares. |
|---|---|---|---|
| March 22, 1920 | 567 | March 27, 1920 | 3,759 |
| March 23, 1920 | 1,165 | March 29, 1920 | 4,401 |
| March 24, 1920 | 1,719 | March 30, 1920 | 5,312 |
| March 25, 1920 | 2,952 | March 31, 1920 | 5,475 |
| March 26, 1920 | 3,093 | April 1, 1920 | 5,655 |

| | Shares. | | Shares. |
|---|---|---|---|
| April 3, 1920 | 5,928 | April 21, 1920 | 9,576 |
| April 5, 1920 | 6,108 | April 22, 1920 | 9,628 |
| April 6, 1920 | 6,513 | April 23, 1920 | 9,673 |
| April 7, 1920 | 7,323 | April 24, 1920 | 9,708 |
| April 8, 1920 | 7,620 | April 26, 1920 | 9,712 |
| April 9, 1920 | 7,717 | April 27, 1920 | 9,718 |
| April 10, 1920 | 8,011 | April 28, 1920 | 9,723 |
| April 12, 1920 | 8,390 | April 29, 1920 | 9,751 |
| April 13, 1920 | 8,520 | April 30, 1920 | 9,786 |
| April 14, 1920 | 8,627 | May 3, 1920 | 9,804 |
| April 15, 1920 | 8,827 | May 4, 1920 | 9,807 |
| April 16, 1920 | 8,858 | May 14, 1920 | 9,817 |
| April 17, 1920 | 9,076 | May 19, 1920 | 9,821 |
| April 19, 1920 | 9,360 | May 26, 1920 | 9,897 |
| April 20, 1920 | 9,526 | June 2, 1920 | 9,999 |

On March 29, 1926, the Fidelity Company sent to all its stockholders the following blank form of proxy:

### PROXY

Know all Men by these Presents; that _____ do make, constitute and appoint William P. Gest, J. C. Neff and Joseph McMorris, or any of them _____ true and lawful proxy or proxies, for _____ and in _____ name to attend a special meeting of the stockholders of the Fidelity Trust Company, to be held at the office of the Company, 325 Chestnut Street, in the City of Philadelphia, State of Pennsylvania, on the 2nd day of June, 1920, at 12 o'clock M., and then and there or at any adjournment or adjournments of said meeting vote the shares of stock of the Company standing in _____ name on its books for or against the following resolutions, viz—

Resolved, that the capital stock of this Company be increased from $5,000,000 to $5,200,000, by the issue of 2000 additional share of the par value of $100 per share.

Resolved, that the agreement heretofore made by this Company, providing for the purchase of stock of the Logan Trust Company at a price equal to the par value thereof, payable in capital stock of this Company at a valuation or rate of $500 per share, be and the same is hereby ratified and approved, and the officers and Board of Directors of this Company are hereby authorized to carry said agreement into effect by issuing and delivering new stock of this Company, authorized at this meeting, to holders of stock of the Logan Trust Company in exchange for said stock, on the terms and conditions of the said agreement.

And also to vote upon any other business that may come before said meeting or any adjournment or adjournments thereof, with the same force and effect as _____ could do if personally present, with power of substitution, hereby ratifying and confirming whatever _____ said proxy or proxies, or their or his substitute or substitutes may lawfully do by virtue hereof.

Witness _____ hand and seal this _____ day of _____ 1920.
Witness:               _____ [L. S.]

The by-laws of the Fidelity Company provided that the capital stock could be increased by the action of the owners of a majority of the outstanding capital stock. In the history of the company the stockholders had never failed to ratify the action of the directors.

The first proxies to come in were dated April 1, 1926. On April 2nd proxies for 28,559 shares, or over 50 per cent of the stock had been executed; on April 3rd over 60 per cent, on April 7th over 80 per cent; and on April 22nd over 90 per cent.

On June 2, 1920, a meeting of the stockholders of the Fidelity Company was held and the resolutions set forth in the form of proxy were adopted, and the capital stock was increased by $200,000 par value.

On June 4, 1920, the directors of the Fidelity Company resolved to perform the acts required by the agreement of March 22, 1926, to issue new stock certificates in conformity with the new capitalization. and to purchase all the property of the Logan Company and assume its liabilities. On June 9, 1920, the Fidelity Company offered to purchase the Logan Company's property subject to outstanding obligations as of June 12, 1920, for $1,000,000 cash, and a deed therefor was executed and delivered June 12, 1920. The Fidelity Company was on that date the owner of all the stock and all the property of the Logan Company. No dividends were declared or paid by the Logan Company after March 22, 1920.

On January 17, 1922, the following letter was sent by the Treasury Department to the Fidelity Company:

TREASURY DEPARTMENT<br>Washington

IT : SA : CR : Af　　　　　　　　　　　　　　　　　　　　　　Jan 17 1922
LJP-8
Fidelity Trust Company,
　　325 Chestnut Street,
　　　　Philadelphia, Pennsylvania.
Sirs:

Reference is made to the executed Affiliated Corporations Questionnaire filed by you for the taxable year 1921 and to the statement and correspondence relative thereto.

From the facts presented, you are advised that during the taxable year ended January 31, 1921 your company, the Fidelity Building Corporation, and the Logan Trust Company, (from the date of acquisition, March 22, 1920) were affiliated within the purview of Section 240 of the Revenue Act of 1918. You should, therefore, file a consolidated income and profits tax return for the above-mentioned fiscal year including therein the Fidelity Building Corporation for the entire year and the Logan Trust Company from the date of acquisition, provided that such action has not been taken.

Pursuant to this ruling, a copy of this letter should be attached to the return when filed.

If not in agreement with this ruling, you are requested to submit an answer within thirty days from the date of this letter.

In your reply, refer to IT : SA : CR : Af–LJP–8.
　　Respectfully,

E. H. BATSON,<br>Deputy Commissioner.

By　　(Signed)　　Wm. P. Bird<br>Chief of Subdivision.

On April 24, 1925, the Commissioner advised the petitioner of " a revised affiliation ruling deeming the Logan Trust Company affiliated with the Fidelity Trust Company from June 2, 1920," and determined the deficiency of $64,560.70.

OPINION.

STERNHAGEN: The petitioner contests the validity of the Commissioner's final determination that it was not until June 2, 1920, that there was an affiliation between the petitioner and the Logan Trust Co., within section 240 of the Revenue Act of 1918, and takes its stand upon an earlier determination of the Commissioner that such an affiliation must be recognized from March 22, 1920. The Logan Trust Co. is not being called upon for any additional tax, and nominally it has not appeared or become a party to the proceedings, so that, from a strict regard for the rights and obligations of parties, it might be questionable how far its interests could be affected by any decision now rendered. But the parties here have proceeded as though the Logan Company were at one with the petitioner, and, since this is apparently completely so, we assume the acquiescence of the Logan Company in the redetermination prayed for. That we do so, however, in the amicable circumstances existing in this proceeding, can not in another case control our disposition of any question properly presented as to the necessity of having before us all interested parties.

The issue is not simply whether these two corporations were affiliated on June 2, 1920, as claimed by the Commissioner, or on March 22, 1920, as claimed by the petitioner, for it is readily conceivable that the answer to both those questions would still leave open the question of the proper deficiency. By the statute, this Board is required to redetermine the deficiency, *Hotel de France Co.*, 1 B. T. A. 28, and in order properly to do this it is necessary to determine all the facts and establish all the intermediate conclusions upon which such a redetermination can correctly be based. Like a court of equity, the Board, having jurisdiction of the ultimate subject matter, must consider all matters necessary to the proper exercise of that jurisdiction. *Shaffer* v. *Carter*, 252 U. S. 37, 48. The question, therefore, principally to be decided here is not only whether the taxpayer is right or wrong, but upon what date did the conditions of statutory affiliation first exist. *American La Dentelle, Inc.*, 1 B. T. A. 575. Both parties agree that affiliation existed on June 2, 1920. Neither party contends that affiliation existed prior to March 22nd. It is some time between these two dates that the scale is tipped.

The case turns upon the application of section 240(b) of the Revenue Act of 1918, which is as follows:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

On March 22, 1920, the president of the Fidelity Company offered, in behalf of his corporation, to purchase the stock of the Logan Company upon certain expressed conditions. This offer was made not directly to each of the stockholders but to the president of the Logan Company and by him communicated to the directors, who voted to accept the offer and recommended its acceptance to each stockholder. They also undertook to persuade the individual stockholders to accept the offer and its conditions. On the same day the Logan Company directors, by resignations and substitutions, placed, so far as it was in their power to do so, the board of directors, and hence the affairs of the Logan Company, in the hands of the directors of the Fidelity Company. The president of the Fidelity Company was immediately elected to be president of the Logan Company. On the same day an agreement was made between Lippincott and others, "as managing committee for stockholders of Logan Trust Company," and the Fidelity Company, "as trustee," providing for the method of fulfillment of the purchase contemplated by the offer of the Fidelity Company. And on that date there were deposited with the Fidelity Company, as trustee under the agreement, 567 shares of Logan Company stock.

These circumstances, it is contended, fulfill the requirements of affiliation, the argument proceeding not so much from the legal significance of the events of the day as from their practical significance. The Logan Company was in dire straits and its stockholders were pressed by necessity. Fulfillment of the plan was the only reasonable course, and in the opinion of all who knew it was bound to be carried out. Quick action was needed, the Logan Company directors took it, and the Fidelity Company and all concerned were confident that their action would not be questioned. To support this view, it is proven that there was complete adoption of the plan by everyone concerned as early as the evidence of such adoption could be given, and by the doctrine of ratification the legal effect of the subsequent acts is sought to be related back to March 22nd.

Looking at the facts as they were on that date, we are of opinion that the Fidelity Company did not own or control substantially all of the Logan Company stock. That it did not own the stock is clear. The process of acquiring it had just begun, and many of the owners of stock were on that date not aware of the plan of reor-

ganization. The announcement published in the press has not by the evidence been brought home to the stockholders and could not serve to deprive them of either ownership or control.

Nor is there evidence of control at that time. The Fidelity Company by its agreement recognized its lack of control and protected itself against failure of control by reserving the condition that 80 per cent of the stock should be deposited before the agreement became effective, unless the Fidelity Company elected otherwise. The effect of the agreement is plain; it was entirely executory and not binding upon any stockholder who had not accepted it in the prescribed manner. Petitioner's counsel argues at length that Lippincott or his associates were agents of the stockholders for the sale of the stock, and that by making the agreement to sell they bound the stockholders and thus placed the Fidelity Company in control of the stock and the business. But the officers or directors of a corporation are not the agents of the individual stockholders and have no control over the stock; and they did not attempt to exercise such authority, but confined themselves to a mere recommendation to the stockholders that they accept the offer by depositing their stock. The stockholder until he deposited his stock was still the owner and in complete control of all the incidents of ownership. The Fidelity Company was until that time merely in a state of expectancy, the outcome of which rested with someone other than itself. When the stockholder deposited his stock he became a party to the agreement from that time forth. There was nothing in this act by way of ratification and nothing to be related back to March 22, 1920. No one had sold or agreed to sell as of that date and there was nothing which needed ratification. There was an offer of the Fidelity Company to purchase and this offer and its conditions were *pro tanto* accepted by the deposit of stock. When the stockholder made this deposit he acted for himself and became for the first time a party to the agreement. He was not ratifying an act that had already been done for him and was not recognizing that an agency had existed.

The petitioner rests its assertion of control on the further premise that on March 22, 1920, it had a majority of the board of directors of the Logan Company. The evidence discloses that nine of the sixteen duly elected directors resigned on that date and that their places were immediately filled in the directors' meeting. The power of the board to accomplish these substitutions is not here in dispute, but it may be seriously questioned whether such a procedure was sufficient to give the new directors any authority over the affairs of the Logan Company. See *Wright* v. *Commonwealth*, 109 Pa. St. 560; 1 Atl. 794; *Moses* v. *Tompkins*, 84 Ala. 613; 4 So. 763; *Mecleary* v. *John S. Mecleary, Inc.*, (Del.) 119 Atl. 557. And it can hardly be contended that by a substitution of the board so accomplished the

Fidelity Company gained control of substantially all of the stock of the Logan Company,—the very stock which it was seeking regularly to control through ownership by the means prescribed in the agreement. This agreement was made in recognition of the lack of ownership or control of the Fidelity Company and of the entire freedom of each individual stockholder to determine voluntarily whether to become party to it or to take his chance otherwise.

The reliance of petitioner upon a distinction between what is called actual control and legal control makes it essential to keep in mind that the statute makes no such distinction. The word control as found in the statute is unadorned, and we may not inject a qualification not manifestly intended by Congress. The question must in each case turn upon the application to the facts of the word control. The most that can be determined as of March 22, 1920, is that the Fidelity Company had started on a course which it hoped and believed would give it ownership and control of the Logan Company and its stock, and this incipient stage we think is not sufficient to satisfy the statute.

When, in the rapid progress of events, was control first established? It is not disputed that the Fidelity Company controlled the corporate and business affairs of the Logan Company at once. The Logan directors yielded to the demand of the Fidelity Company and turned over to it the full management. This they felt compelled to do and no one questions their faith or wisdom in doing so. But the statute contemplates more. *Norwich & Worcester R. R. Co.*, 2 B. T. A. 215.

The condition of the agreement that the Fidelity stockholders should approve the purchase of the Logan stock did not obstruct the control of the stock in so far as such control may have otherwise existed prior to the approval. This was a condition which the Fidelity Company imposed for its own protection, and since there was no legal reason in Pennsylvania why the stock could not have been purchased outright it rested with the Fidelity Company to free itself from this condition at its choice. It was not deprived of control because it voluntarily chose not to exercise it to the full extent until the stockholders' meeting. The Fidelity's increase of capital stock was dependent upon the stockholders' approval but this was not a necessary legal condition of the sale, which could have been effected by the transfer of existing stock if it were available. Since the stockholders' meeting was not a condition precedent to control, it is apparent that the execution of proxies by Fidelity stockholders does not affect the question. The control does not depend so much upon the Fidelity Company's acts as upon the acts of the Logan Company stockholders with whom rested the power to obstruct it.

The plan by its terms did not become operative until 80% of the Logan Company stock was deposited, and this in fact was on April

10, 1920. While it is true that prior to that date the depositing stockholders had agreed not to vote the stock, it is also true that the Fidelity Company had no right or power in respect of such stock. Such restraint as was imposed upon the stockholder after deposit was voluntary and not because of the control of the Fidelity Company. The principal incident of ownership of the stock, namely, the right to such dividends as might be declared, expressly remained with the depositing stockholder; and this is inconsistent with the petitioner's contention that it was the beneficial owner of the stock. When, however, on April 10, 1920, the prescribed 80% of the stock was deposited, the Fidelity Company's right to control it was substantially complete. Both parties to the sale were then bound and the right of the depositor of the stock was to receive the purchase price in lieu of his prior ownership of Logan Company stock. The remaining minority, while still the owners in possession of their stock during the short period until its deposit, controlled nothing. They were powerless to vote, for there was no way of calling a meeting at which to vote, except as the Fidelity Company chose to do so, and there was nothing else that their stock represented to them that the Fidelity Company did not dominate. There was no chance of a dividend and no way to compel one, for the board of directors was either impotent, since the majority had resigned, or else the new majority, if authoritative, was the instrument of the Fidelity Company. And this situation only arose when the deposit of 80% of the stock made the agreement effective and converted the Fidelity Company's offer into a right. Until that time, when less than 80% was deposited, the Fidelity Company could do nothing as to the stock unless it first exercised its right to declare the agreement operative.

We therefore hold that the petitioner and the Logan Trust Co. were affiliated on and after April 10, 1920.

*Judgment will be entered under Rule 50 in accordance with this opinion.*

PHILLIPS concurs in the result only.