*423 OPINION.
Sternhagen
: The petitioner contests the validity of the Commissioner’s final determination that it was not until June 2, 1920, that there was an affiliation between the petitioner and the Logan Trust Co., within section 240 of the Revenue Act of 1918, and takes its stand upon an earlier determination of the Commissioner that such an affiliation must be recognized from March 22, 1920. The Logan Trust Co. is not being called upon for any additional tax, and nominally it has not appeared or become a party to the proceedings, so that, from a strict regard for the rights and obligations of parties, it might be questionable how far its interests could be affected by any decision now rendered. But the parties here have proceeded as though the Logan Company were at one with the petitioner, and, since this is apparently completely so, we assume the acquiescence of the Logan Company in the redetermination prayed for. That we do so, however, in the amicable circumstances existing in this proceeding, can not in another case control our disposition of any question properly presented as to the necessity of having before us all interested parties.
The issue is not simply whether these two corporations were affiliated on June 2, 1920, as claimed by the Commissioner, or on March 22, 1920, as claimed by the petitioner, for it is readily conceivable that the answer to both those questions would still leave open the question of the proper deficiency. By the statute, this Board is required to redetermine the deficiency, Hotel de France Co., 1 B. T. A. 28, and in order properly to do this it is necessary to determine all the facts and establish all the intermediate conclusions upon which such a redetermination can correctly be based. Like a court of equity, the Board, having jurisdiction of the ultimate subject matter, must consider all matters necessary to the proper exercise of that jurisdiction. Shaffer v. Carter, 252 U. S. 37, 48. The question, therefore, principally to be decided here is not only whether the taxpayer is right or wrong, but upon what date did the conditions of statutory affiliation first exist. American La Dentelle, Inc., 1 B. T. A. 575. Both parties agree that affiliation existed on June 2, 1920. Neither party contends that affiliation existed prior to March 22nd. It is some time between these two dates that the scale is tipped.
*424 The case turns upon the application of section 240(b) of the Revenue Act of 1918, which is as follows:
For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.
On March 22, 1920, the president of the Fidelity Company offered, in behalf of his corporation, to purchase the stock of the Logan Company upon certain expressed conditions. This offer was made not directly to each of the stockholders but to the president of the Logan Company and by him communicated to the directors, who voted to accept the offer and recommended its acceptance to each stockholder. They also undertook to persuade the individual stockholders to accept the offer and its conditions. On' the same day the Logan Company directors, by resignations and substitutions, placed, so far as it was in their power to do so, the board of directors, and hence the affairs of the Logan Company, in the hands of the directors of the Fidelity Company. The president of the Fidelity Company was immediately elected to be president of the Logan Company. On the same day an agreement was made between Lip-pincott and others, “ as managing committee for stockholders of Logan Trust Company,” and the Fidelity Company, “ as trustee,” providing for the method of fulfillment of the purchase contemplated by the offer of the Fidelity Company. And on that date there were deposited with the Fidelity Company, as trustee under the agreement1, 567 shares of Logan Company stock.
These circumstances, it is contended, fulfill the requirements of affiliation, the argument proceeding not so much from the legal significance of the events of the day as from their practical significance. The Logan Company was in dire straits and its stockholders were pressed by necessity. Fulfillment of the plan was the only reasonable course, and in the opinion of all who knew it was bound to be carried out. Quick action was needed, the Logan Company directors took it, and the Fidelity Company and all concerned were confident that their action would not be questioned. To support this view, it is proven that there was complete adoption of the plan by everyone concerned as early as the evidence of such adoption could be given, and by the doctrine of ratification the legal effect of the subsequent acts is sought to be related back to March 22nd.
Looking at the facts as they were on that date, we are of opinion that the Fidelity Company did not own or control substantially. all of the Logan Company stock. That it did not own the stock is clear. The process of acquiring it had just begun, and many of the owners of stock were on that date not aware of the plan of reor *425 ganization. Tlie announcement published in the press has not by the evidence been brought home to the stockholders and could not serve to deprive them of either ownership or control.
Nor is there evidence of control at that time. The Fidelity Company by its agreement recognized its lack of control and protected itself against failure of control by reserving the condition that SO per cent of the stock should be deposited before the agreement became effective, unless the Fidelity Company elected otherwise. The effect of the agreement is plain; it was entirely executory and not binding upon any stockholder who had not accepted it in the prescribed manner. Petitioner’s counsel argues at length that Lippincott or his associates were agents of the stockholders for the sale of the stock, and that by making the agreement to sell they bound the stockholders and thus placed the Fidelity Company in control of the stock and the business. But the officers or directors of a corporation are not the agents of the individual stockholders and have no control over the stock; and they did not attempt to exercise such authority, but confined themselves to a mere recommendation to the stockholders that they accept the offer by depositing their stock. The stockholder until he deposited his stock was still the owner and in complete control of all the incidents of ownership. The Fidelity Company was until that time merely in a state of expectancy, the outcome of which rested with someone other than itself. When the stockholder deposited his stock he became a party to the agreement from that time forth. There was nothing in this act by way of ratification and nothing to be related back to March 22, 1920. No one had sold or agreed to sell as of that date and there was nothing which needed ratification. There was an offer of the Fidelity Company to purchase and this offer and its conditions were fro tanto accepted by the deposit of stock. When the stockholder made this deposit he acted for himself and became for the first time a party to the agreement. He was not ratifying an act that had already been done for him and was not recognizing that an agency had existed.
The petitioner rests its assertion of control on the further premise that on March 22, 1920, it had a majority of the board of directors of the Logan Company. The evidence discloses that nine of the sixteen duly elected directors resigned on that date and that their places were immediately filled in the directors’ meeting. The power of the board to accomplish these substitutions is not here in dispute, but it may be seriously questioned whether such a procedure was sufficient to give the new directors any authority over the affairs of the Logan Company. See Wright v. Commomwealth, 109 Pa. St. 560; 1 Atl. 794; Moses v. Tompkins, 84 Ala. 613; 4 So. 763; Mecleary v. John S. Mecleary, Inc., (Del.) 119 Atl. 557. And it can hardly be contended that by a substitution of the board so accomplished the *426 Fidelity Company gained control of siibstantially all of the stock of the Logan Company, — the very stock which it was seeking regularly to control through ownership by the means prescribed in the agreement. This agreement was made in recognition of the lack of ownership or control of the Fidelity Company and of the entire freedom of each individual stockholder to determine voluntarily whether to become party to it or to take his chance otherwise.
The reliance of petitioner upon a distinction between what is called actual control and legal control makes it essential to keep in mind that the statute makes no such distinction. _ The word control as found in the statute is unadorned, and we may not inject a qualification not manifestly intended by Congress. The question must in each case turn upon the application to the facts of the word control. The most that can be determined as of March 22, 1920, is that the Fidelity Company had started on a course which it hoped and believed would give it ownership and control of the Logan Company and its stock, and this incipient stage we think is not sufficient to satisfy the statute.
When, in the rapid progress of events, was control first established? It is not disputed that the Fidelity Company controlled the corporate and business affairs of the Logan Company at once. The Logan directors yielded to the demand of the Fidelity Company and turned over to it the full management. This they felt compelled to do and no one questions their faith or wisdom in doing so. But the statute contemplates more. Norwich & Worcester R. R. Co., 2 B. T. A. 215.
The condition of the agreement that the Fidelity stockholders should approve the purchase of the Logan stock did not obstruct the control of the stock in so far as such control may have otherwise existed prior to the approval. This was a condition which the Fidelity Company imposed for its own protection, and since there was no legal reason in Pennsylvania why the stock could not have been purchased outright it rested with the Fidelity Company to free itself from this condition at its choice. It was not deprived of control because it voluntarily chose not to exercise it to the full extent until the stockholders’ meeting. The Fidelity’s increase of capital stock was dependent upon the stockholders’ approval but this was not a necessary legal condition of the sale, which could have been effected by the transfer of existing stock if it were available. Since the stockholders’ meeting was not a condition precedent to control, it is apparent that the execution of proxies by Fidelity stockholders does not affect the question. The control does not depend so much upon the Fidelity Company’s acts as upon the acts of the Logan Company stockholders with whom rested the power to obstruct it.
The plan by its terms did not become operative until 80% of the Logan Company stock was deposited, and this in fact was on April *427 10,1920. While it is true that prior to that date the depositing stockholders had agreed not to vote the stock, it is also true that the Fidelity Company had no right or power in respect of such stock. Such restraint as was imposed upon the stockholder after deposit was voluntary and not because of the control of the Fidelity Company. The principal incident of ownership of the stock, namely, the right to such dividends as might be declared, expressly remained with the depositing stockholder; and this is inconsistent with the petitioner’s contention that it was the beneficial owner of the stock. When, however, on April 10, 1920, the prescribed 80% of the stock was deposited, the Fidelity Company’s right to control it was substantially complete. Both parties to the sale were then bound and the right of the depositor of the stock was to receive the purchase price in lieu of his prior ownership of Logan Company stock. The remaining minority, while still the owners in possession of their stock during the short period until its deposit, controlled nothing. They were powerless to vote, for there was no way of calling a meeting at which to vote, except as the Fidelity Company chose to do so, and there was nothing else that their stock.represented to them that the Fidelity Company did not dominate. There was no chance of a dividend and no way to compel one, for the board of directors was either impotent, since the majority had resigned, or else the new majority, if authoritative, was the instrument of the Fidelity Company. And this situation only arose when the deposit of 80% of the stock made the agreement effective and converted the Fidelity Company’s offer into a right. Until that time, when less than 80% was deposited, the Fidelity Company could do nothing as to the stock unless it first exercised its right to declare the agreement operative.
We therefore hold that the petitioner and the Logan Trust Co. were affiliated on and after April 10, 1920.

Judgment will he entered under Rule 50 in accordance with this opinion.

Phillips concurs in the result only.